SCOTT N. SCHOOLS (SC 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6968
    FAX: (415) 436-7253
    Email: scott.schools2@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 3-07-0531 SI |
|     Plaintiff, ) | |
| ) | SENTENCING MEMORANDUM OF |
|     v. ) | THE UNITED STATES |
| ) | |
| ROMMEL BORJAS, ) | |
|     a/k/a "Shorty" ) | |
| ) | |
|     Defendant. ) | |

    Comes now the United States of America, by and through its undesigned counsel, and hereby submits this Sentencing Memorandum regarding the above-styled case.

**I. Summary of facts relevant to sentencing**

    The defendant was charged in a single count indictment with possession of 5 grams or more of cocaine base in the form of crack in violation of 21 U.S.C. §841(a)(1). The defendant pleaded to the indictment without the benefit of a plea agreement on September 14, 2007. Although the defendant has a prior conviction for transporting/selling a controlled substance (*see* Presentence Report (PSR), ¶ 27), the government refrained from filing an information pursuant to 21 U.S.C. §851. The PSR calculates the defendant's guidelines range as 70-87 months, and the

government has no unresolved objections regarding that calculation. Because the defendant possessed more than 5 grams of crack, his sentence cannot be below 60 months imprisonment. 21 U.S.C. §841(b)(1)(B). Had the government filed the 851 information, the defendant would face a mandatory minimum sentence of 120 months. *Id.* The defendant has declined to offer his cooperation to the government, and the government has no intention of moving for a departure pursuant to U.S.S.G. §5K1.1.

The PSR reflects a defendant who, at the age of 32, has consistently demonstrated disrespect for the law. He entered the country at age 13, spent four years in custody with the California Youth Authority from age 17 to 21, and has been in and out of custody since his release reporting that the longest period of non-incarceration occurred between 2004 and 2006 (¶ 44). The defendant has sustained five felony convictions (¶¶ 24-28) and demonstrated his unwillingness to comply with supervision by having his probation modified twice to impose additional jail time as a result of criminal conduct that occurred while he was on supervision (¶ 27), and he committed the instant offense while under a criminal sentence (¶ 30). He has eight additional arrests that did not result in conviction (¶¶ 33-40).

The PSR reports the defendant's association with the Norteño gang in San Francisco (¶ 44). The Norteño gang is related to the Nuestra Familia prison gang and generally engages in a criminal lifestyle that includes narcotics trafficking and violence. In 2005, Assistant Director Chris Swecker of the Federal Bureau of Investigation testified before Congress and briefly described the origins of the Norteños as follows:

> Hispanic gangs in California have separated into two rival factions, the Norteños, which are primarily found in Northern California, and the Sureños, found to the south and predominantly in the urban areas surrounding Los Angeles. A rivalry exists between these factions, which had its genesis in the California Department of Corrections during the 1960s, when the Nuestra Familia (Norteños) prison gang formed to oppose the Mexican Mafia (Sureños) prison gang. Today, the Mexican Mafia, and other Hispanic prison gangs, such as the La EME in southern California, the Texas Syndicate (T/S, Syndicato Tejano), and the Mexikanemi (EMI, Texas Mexican Mafia) remain powerful both in prison and on the street, and most Hispanic gangs in California align themselves under the Norteños or the Sureños.

http://www.fbi.gov/congress/congress05/swecker042005.htm. In June 2007, the National Drug Intelligence Center published a drug threat assessment that described the Sureños and Norteños

as follows:

> Sureños and Norteños are affiliations of Hispanic street gangs that initially formed in the California Department of Corrections by members who wanted to ally themselves with incarcerated street gang members from other areas. Hispanic street gangs in southern California (Bakersfield and points south) were known as Sureños street gangs, while those from central and northern California (north of Bakersfield) were known as Norteños street gangs. Hispanic street gangs operating in the Northern California HIDTA[1] region are typically affiliated with Sureños and Norteños gang associations. The two groups are adversaries both inside and outside the prison system.

http://www.usdoj.gov/ndic/pubs23/23934/dtos.htm. The assessment further finds, "Hispanic street gangs, primarily affiliates of Sureños and Norteños gangs, are involved in midlevel and retail-level distribution of methamphetamine, marijuana, cocaine, and heroin." *Id.*

The defendant's association with a street gang and his criminal history along with the offense of conviction, which occurred while he was under a criminal justice sentence, confirm his commitment to a life of crime. The PSR reports no socially responsible behavior on the part of the defendant; indeed, he appears to have fathered five children (¶ 45), but parenting these children did not inhibit his desire to engage in criminal activity. Rather, his newest child, born just one year ago, is just the latest of this defendant's children to be abandoned by her father so that he could pursue criminal endeavors. Any suggestion that this defendant's familial responsibilities warrant a *shorter* sentence contradicts the reality of this defendant's total lack of regard for those same responsibilities.

## II. Sentencing factors

This Court is obligated to consider not only the guidelines range applicable to this defendant but also the sentencing factors listed in 18 U.S.C. §3553(a). The government will address these factors *seriatim*.

### A. Nature and circumstances of the offense (18 U.S.C. §3553(a)(1))

The charge in this case arose out of the defendant's possession of approximately 25 grams of crack cocaine. San Francisco Police Department officers patrolling a high crime area saw the defendant talking furtively with another male. The officers approached the defendant, whom

---

[1] HIDTA refers to the High Intensity Drug Trafficking Area.

SENTENCING MEMORANDUM

3

they knew to be on probation at the time. The asked him questions, received evasive responses, conducted a search of his person, and discovered a "chunk" of crack cocaine. A federal grand jury returned an indictment for possession with intent to distribute crack cocaine on August 9, 2007, and the defendant pleaded guilty to that charge on September 14, 2007.

In many ways, this case looks like "just another crack case." However, this defendant's criminal history and his association with the Norteños street gang suggest otherwise. The NDIC report referenced above noted, "Mexican DTOs based in the Northern California HIDTA region dominate illicit drug transportation and wholesale distribution in the area as well as distribution from the area to drug markets throughout the country." This midlevel and retail level distribution of crack cocaine wreaks havoc on neighborhoods and creates distribution channels for those DTOs. Thus, the Court's assessment of the nature and circumstances of the offense should reflect that his offense occurred in the context of his association with a street gang.

**B. History and characteristics of the defendant (18 U.S.C. §3553(a)(1))**

As noted above, the defendant has lived a life of crime undeterred by social responsibilities or fear of incarceration. The defendant has spent time in prison and subsequently engaged in dangerous criminal conduct. It is evident that at the age of 32, this defendant is not deterred by the possibility of prosecution and incarceration nor has he shown any inclination to forego a life of crime to meet familial or other social responsibilities. In short, there is nothing in this defendant's history that would support imposition of a below-guidelines prison sentence. To the contrary, this defendant's criminal history suggests that he will continue to engage in illicit behavior as soon as he is released from prison.

**C. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. §3553(a)(2)(A)-(D))**

The sentencing guidelines, drafted by the United States Sentencing Commission and approved by Congress, were intended to "further the basic purposes of criminal punishment, i.e. deterring crime, incapacitating the offender, providing just punishment, and rehabilitating the

SENTENCING MEMORANDUM

4

offender." U.S.S.G. Part A, ¶ 1. By mandating the drafting of sentencing guidelines, Congress sought to achieve three sentencing goals, to wit honesty, uniformity, and proportionality. *Id.* at ¶3. While the extent to which Congress and the Commission succeeded in accomplishing this objective is subject to debate, in this instance the applicable guideline range, which reflects a recent reduction in the crack cocaine guidelines, appears to achieve the objectives of Section 3553(a)(2). The sentence is significant enough to promote respect for the law and provide just punishment for the offense in that it represents what the Commission and Congress believe to be fair in similarly situated cases throughout the country. Because of the absence of factors that suggest a lower sentence would be likewise effective, the consideration of the judgment of the Commission weighs heavily.

In addition, as noted above, the defendant appears committed to participation in criminal conduct, and the sentence is therefore necessary to protect the public from his criminal conduct for a significant period of time.  Where it appears certain that the defendant's participation in criminal behavior will occur, the Court can and should act to postpone his opportunities for such behavior for as long as it can within the guidelines range.  The guidelines range in this case arguably understates the defendant's criminal history because it fails to provide enhancements for three prior felony convictions and eight arrests. While the government does not seek an above-guidelines sentence in this case, a sentence at the top of the guideline range would address the arguably understated criminal history and incapacitate the defendant from future criminal conduct for a reasonable period of time.

Furthermore, imposition of a guidelines sentence in this case and others deters future criminal conduct in this community by assuring that sentences in this district are not significantly and regularly lower than sentences in other districts or regions of the country.

**D. The kinds of sentences available (18 U.S.C. §3553(a)(3))**

The sentencing guidelines recommend a sentence of incarceration in this matter. Although the Court is not obligated to impose such a sentence, this defendant's criminal history supports imposition of a lengthy term of incarceration rather than an alternative form of sentence.

SENTENCING MEMORANDUM

E.  The kinds of sentence and the sentencing range established for
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
   (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
   (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced
(18 U.S.C. §3553(4))

The government has previously addressed the current guideline range for this defendant and articulated why the range is appropriate in this case.

F.  **Any pertinent policy statements (18 U.S.C. §3553(5))**

The only suggested mitigating factor in this case is the defendant's reported addiction to polysubstances including methamphetamine. U.S.S.G. §5H1.4 provides, "Drug or alcohol dependence or abuse is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime." For this reason, the defendant's dependence on controlled substances, if it exists, should not encourage a reduced sentence under Section 3553(a).

G.  **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (18 U.S.C. §3553(a)(6)**

The government addressed this factor above. The guidelines were intended to achieve the uniformity suggested by this factor, and the most effective way of assuring that uniformity is through imposition of a guideline sentence.

**III.  Conclusion**

For all of the reasons stated above, the government suggests that a sentence at the top of the guideline range is most appropriate in this case, and requests that the Court impose a sentence of 87 months imprisonment, followed by five years of supervised release with appropriate conditions.

DATED: Nov. 15, 2007

Respectfully submitted,

/s/ signature
SCOTT N. SCHOOLS
United States Attorney

SENTENCING MEMORANDUM

7