BARRY J. PORTMAN
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant BORJAS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 07-0531 SI |
|---|---|---|
| Plaintiff, | ) ) | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | ) ) | |
| ROMMEL BORJAS, | ) ) | Honorable Susan Illston November 30, 2007 11:00 a.m. |
| Defendant. | ) ) | |

**INTRODUCTION**

The government, in recommending a sentence at the high end of the guideline range for Defendant Rommel Borjas based primarily upon allegations of gang involvement, ignores the better half of the sentencing equation, including his troubled background, his desire for drug treatment, which he has never previously received, his lost opportunity to serve concurrent time and his extraordinary acceptance of responsibility for this offense. Based upon the totality of applicable sentencing factors under 18 U.S.C. § 3553(a), the Court should sentence Mr. Borjas to 60 months imprisonment.

**ARGUMENT**

**I.   THE COURT IS NOT REQUIRED TO IMPOSE A GUIDELINE SENTENCE**

It is undisputed that the advisory guideline sentencing range for Mr. Borjas is 70 to 87 months, based upon an adjusted offense level of 23 (one ounce of crack cocaine minus three levels for early acceptance of responsibility) and criminal history category IV. PSR ¶ 59. The Probation Office recommends a sentence of 75 months, closer to the low end of the range. *See* PSR Recommendation. However, the Court is no longer bound to impose a guideline sentence.

Freed from the requirement of mandatory sentencing guidelines, district courts are now guided in their sentencing discretion by the remaining statutory enactments of Congress. As a result of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), the guidelines are now just one of many sources that courts must consult at sentencing. Instead, the provisions of several statutes must be weighed and considered by courts to determine the minimum sentence necessary to achieve the purposes of sentencing. Together these statutes require a more balanced and individualized approach to determining a fair and just sentence than was previously permitted under the guidelines.

The Supreme Court in *Booker* directs sentencing courts to the remaining provisions of the Sentencing Act, particularly § 3553(a), for guidance in determining a "reasonable" sentence. *Booker,* 543 U.S. at 233-34. Section 3553(a) mandates that "[t]he court shall impose a sentence

sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3551(a) (providing that a defendant "shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case"). Those purposes are:

> the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In addition to setting forth the purposes for courts to achieve at sentencing, § 3553(a) enumerates several other factors, in addition to the overall purposes of sentencing articulated in § 3553(a)(2), for courts to consider in exercising its sentencing discretion, only one of which is the now-advisory guidelines. Specifically, § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider" the following: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; "the kinds of sentence and the sentencing range established" by the guidelines and "any pertinent policy statement" issued by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (3)-(7).

Moreover, Congress has emphasized that, in considering these factors, sentencing courts are obligated to bear in mind that lengthy imprisonment may not be the best way to achieve the statutory goals of sentencing: "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable,

1  recognizing that imprisonment is not an appropriate means of promoting correction and
2  rehabilitation." 18 U.S.C. § 3582(a).  Thus, courts are required by statute to impose a reasonable
3  sentence, taking into account all of the factors of 18 U.S.C. § 3553(a).

4  **II.    BALANCE OF FACTORS IN COMBINATION WARRANT 60 MONTHS**

5&6  **A.    A Below Guideline Sentence is Warranted by Defendant's Family Ties, Troubled Background, Lost Opportunity to Serve Concurrent Time and Extraordinary Acceptance of Responsibility**

7  Mr. Borjas was born in Nicaragua in 1975.  PSR ¶ 42.  His father abandoned him when he
8  was two years old.  *Id.*  His mother subsequently remarried, but his step-father too left when Mr.
9  Borjas was very young.  *Id.*  In 1985, his mother and older brother came to the United States,
10 leaving Mr. Borjas in Nicaragua with his grandmother and younger brother.  PSR ¶ 43.  Four
11 years later, at age 13, Mr. Borjas legally immigrated to the United States and was reunited with
12 his mother, who was working as a housekeeper in San Francisco's Mission District.  *Id.*

13 Knowing no English–and little about America beyond its illicit support for the "contra"
14 insurgents in his home country–Mr. Borjas that year entered the eighth grade at James Lick
15 Middle School in San Francisco.  *See id.*  It was challenging for Mr. Borjas to learn the language,
16 adjust to a new culture and try to assimilate with the mix of students at his school, as well as to
17 cope with the fact that his residence was located in an area with a high rate of crime, drugs and
18 street violence.  *Id.*  Sadly, Mr. Borjas gravitated towards gangs and drugs as a means of "fitting
19 in."  *Id.*

20 Mr. Borjas began smoking marijuana around the age of 14.  PSR ¶ 44.  Thereafter, he
21 experimented with harder drugs, and eventually developed an addiction to crack cocaine.  *Id.*
22 Mr. Borjas began missing school on account of his drug use and other problems and at the age of
23 16 was placed under the auspices of the Juvenile Justice Facility.  *Id.*  Finally, at the age of 17, he
24 was committed to the California Youth Authority (CYA) for multiple offenses relating directly or
25 indirectly to his drug addiction.  *Id.*
26 / / /

Following his release from CYA on parole in 1995, Mr. Borjas made a "positive adjustment in the community." PSR ¶ 24. Mr. Borjas was honorably discharged from parole in 1996 following his 21st birthday. PSR ¶¶ 26, 44. Unfortunately, by the year 2000, he had relapsed into drug use and sales to support his habit. PSR ¶ 27. Since that time, Mr. Borjas had suffered a total of two adult prior convictions, both felonies, in 2000 and 2003 respectively. PSR ¶¶ 26-27. Mr. Borjas initially received probationary sentences for each offense, and was doing well between 2004 and 2006, when he was arrested on the instant offense, during which time he was employed repairing cars for a neighborhood mechanic and was living with his girlfriend, Sophia. PSR ¶ 44.

However, Mr. Borjas could not shake his involvement with drugs and he was arrested on December 1, 2006, for possessing with intent to distribute an ounce of crack cocaine back in May 2006, resulting in two years imprisonment for a state probation violation and the instant federal charges. PSR ¶¶ 5-6, 28. Mr. Borjas was arrested that day at San Francisco General Hospital after being admitted for treatment of a drug overdose. PSR ¶ 49. Just a couple weeks prior to his arrest, Sophia gave birth to their daughter, Jasmine Rose, in November 2006. PSR ¶ 45. They were subsequently married in March 2007 while he was in custody. *Id.*

Thus, Mr. Borjas has strong family ties and has proven to be both bright and mechanically gifted. Unfortunately, as noted by the Presentence Report, Mr. Borjas also has a history of criminal activity deriving from his "poly substance abuse and addictive behavior." PSR Sentencing Recommendation at 1. In what now seems like a real missed opportunity, Mr. Borjas was never placed in long-term substance abuse treatment. *See id.* at 2. However, he is very motivated to participate in Bureau of Prisons's residential drug abuse program during his impending commitment on this case. *See id.*

Mr. Borjas came to federal magistrate court on a detainer in the instant case after being paroled from state custody in August 2007. PSR ¶ 3. Within one week after his initial appearance in federal district court, Mr. Borjas entered an open guilty plea, without the benefit of

1   any agreement with the government.  PSR ¶ 2.  Mr. Borjas did not seek pretrial release or file any
2   motions or in any way contest his guilt.  Instead, Mr. Borjas took full and early responsibility for
3   his offense without placing any burden on the resources of the Court or the government.
4   Unfortunately, Mr. Borjas was not afforded the opportunity to seek to serve his federal sentence
5   concurrently with any part of his state probation revocation on the same conduct from May 2006,
6   because the government failed to bring him to federal court until after his term was completed in
7   August 2007.  Based upon the combination of these factors, Mr. Borjas respectfully submits that
8   a sentence of 60 months imprisonment, the mandatory minimum in this case and only 10 months
9   below the low end of the advisory guideline range, is warranted here.

10  **B.    Court Should Reject Gang Allegations Beyond PSR**

11  Nevertheless, the government has requested that the Court sentence Mr. Borjas at the high
12  end of the advisory guideline range, based primarily on the alleged impact of his prior gang
13  affiliation.  Specifically, beyond the fact of his prior affiliation, which Mr. Borjas does not
14  contest, *see* PSR ¶ 43, the government in its sentencing memorandum proffers numerous
15  allegations about the impact of gang activity in general not contained in the Presentence Report,
16  in support of its request for a sentence at the high end of the advisory guideline range.  *See* Gov.
17  Memo. at 2-4.  The government's implicit argument is that Mr. Borjas is personally responsible
18  for the impact of this generalized gang activity.  However, the government proffers no specific
19  facts connecting Mr. Borjas to it.  Moreover, even if such facts existed–which Mr. Borjas
20  disputes–the government is procedurally barred from making such a claim now, since it failed
21  timely to object to the absence of those alleged facts from the Presentence Report.  Accordingly,
22  the Court should sentence Mr. Borjas without regard to those disputed allegations.
23  Federal Rule of Criminal Procedure 32 provides for a process by which either party can
24  object to information contained in or improperly omitted from the draft Presentence Report
25  within 14 days after receiving it.  *See* Fed. R. Crim. P. 32(f)(1); *see also* N.D. Cal. Crim. L.R. 32-
26  3(c) (setting an earlier deadline for submitting "[a]ny material a party wishes the Probation

1  Officer to consider for purposes of the proposed presentence report" of "at least 45 days before
2  the date set for sentencing"). The Probation Office is then required to "revise the presentence
3  report as appropriate," after for example meeting with the parties or conducting further
4  investigation. Fed. R. Crim. P. 32(f)(3).
5      At sentencing, the Court then "may permit the parties to introduce evidence on the
6  objections." Fed. R. Crim. P. 32(i)(2). Finally, for any disputed portion of the presentence report
7  or other controverted matter, the Court is required at sentencing to "rule on the dispute or
8  determine that a ruling is unnecessary either because the matter will not affect sentencing, or
9  because the court will not consider the matter in sentencing." F.R.Cr.P. 32(i)(3)(B); *see also*
10 *United States v. Carter,* 219 F.3d 863, 866 (9th Cir. 2000) ("It is well settled in this circuit that
11 when the district court fails to make the required Rule 32 findings or determinations at the time
12 of sentencing, we must vacate the sentence and remand for resentencing.").
13     The Supreme Court, in its most recent decision regarding the constitutionality of judicial
14 fact-finding under the U.S. Sentencing Guidelines, emphasized the importance of the procedural
15 protections under Rule 32. *See Rita v. United States,* 127 S. Ct. 2456, 2465 (2007) ("Thus, the
16 sentencing court subjects the defendant's sentence to the thorough adversarial testing
17 contemplated by the federal sentencing procedure." (citing Rule 32)). In fact, the constitutionality
18 of such judicial finding of facts not presented to the jury or admitted by the defendant depends
19 upon the sentencing court's strict adherence to those procedural protections. Otherwise, the
20 sentence is susceptible to an as-applied constitutional challenge under the Sixth Amendment.
21 *See id.* at 2479 (Scalia, J., concurring) ("The one comfort to be found in the Court's
22 opinion–though it does not excuse the failure to apply *Martinez's* interpretive principle–is that it
23 does not rule out as-applied Sixth Amendment challenges to sentence that would not have been
24 upheld as reasonable on the facts encompassed by the jury verdict or guilty plea.").
25     Nevertheless, the government now apparently seeks to make an end run around the
26 procedural protections of Rule 32 by simply making inflammatory assertions in its sentencing

memorandum, beyond what appears in the Presentence Report, about the generalized impact of Mr. Borjas's prior "association with the Norteños street gang." Gov. Memo. at 4. Had the government made a timely objection pursuant to Rule 32 and submitted any supporting materials in support of its implicit claim that Mr. Borjas had a greater gang affiliation than appears in the Presentence Report, the Probation Officer could then have met with the parties or done further investigation to resolve the dispute, and if the Probation Officer could not resolve it the Court at sentencing could have done so. Instead, the government failed to do so, denying Mr. Borjas the procedural protections of Rule 32, which under *Rita* are required for judicial fact-finding under the U.S. Sentencing Guidelines to be constitutional.

The Court should decline the government's invitation to commit constitutional error by judicially finding facts relevant to sentencing based upon generalized allegations that were not presented to a jury at trial, admitted in a guilty plea, or contained in the Presentence Report. Rather, taking into account the factors set forth above, the Court should sentence Mr. Borjas to 60 months imprisonment.

**CONCLUSION**

For the aforementioned reasons, the Court should impose upon Mr. Borjas a sentence of 60 months imprisonment.

Dated: November 21, 2007

                         Respectfully submitted,

                         BARRY J. PORTMAN
                         Federal Public Defender

                         /S/

                         DANIEL P. BLANK
                         Assistant Federal Public Defender